IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02897-PAB-MEH

DAVID MONTGOMERY, and
WILLIAM MONTGOMERY,

    Plaintiffs,

v.

SHANE VALANDRA, in his individual capacity,

    Defendant.

---

# ORDER

---

This matter is before the Court on the Recommendation of United States Magistrate Judge [Docket No. 39]. Plaintiffs filed their objections on December 6, 2019. Docket No. 40. Defendant filed his response to the objections on December 20, 2019. Docket No. 42. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

On the night of November 11, 2016, plaintiff David Montgomery was standing on a median located in a private roadway to the Federal Plaza Shopping Center in Federal Heights, Colorado. Docket No. 30 at 6, ¶ 5. He was holding a cardboard sign that read "Change Comes In Many Forms," which was intended to "indicat[e] to the public that he was a fellow citizen in need of help" and that "he was interested in receiving forms of

---

[1] The Court assumes that the allegations in plaintiffs' complaint are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

help other than stereotypical 'money.'" *Id.* at 7, ¶ 6. He was standing near Federal Boulevard, a public road. *Id.* at 6, ¶ 5. Plaintiff William Montgomery, David's brother, was holding a sign on the other side of Federal Boulevard. *Id.* at 11, ¶ 8.

Defendant, an officer of the Federal Heights Police Department, saw David holding a cardboard sign. *Id.* at 9, ¶ 7. Defendant activated his emergency lights and approached David from behind. *Id.* Defendant told David that he was panhandling in Federal Heights, which is illegal. *Id.* at 10. David and defendant had a brief conversation before defendant asked David to move to a nearby parking lot. *Id.* at 11, ¶ 8. David asked William to join him in the parking lot. *Id.* Defendant told William to stay where he was, but William wanted to be able to hear the conversation between defendant and David and, as a result, refused. *Id.* at 11-12. When asked if William was "doing the same thing" as David, David told defendant, "not in Federal Heights." *Id.* at 11-12. Defendant realized he had seen plaintiffs before and that this was not plaintiffs' first time being stopped for panhandling. *Id.* at 12.

Defendant asked William for his identification because defendant said that William "included [himself] in [the] incident." *Id.* at 16. At first, William refused to provide his name, asking whether he was being detained. *Id.* at 14-17. After William gave defendant his name, defendant patted William down for weapons. *Id.* at 17-18. The conversation continued for fifteen or so minutes until defendant told William that he was free to go. *Id.* at 21, ¶ 10. However, defendant arrested David for solicitation and trespass. *Id.*, at 21-22, ¶ 11. Defendant brought David to the Federal Heights Police Station where David waited in a holding cell for an hour and a half for processing. *Id.*,

¶ 12. The charges against David were dismissed because defendant did not attend the court proceeding. *Id.* at 23, ¶ 14.

Plaintiffs filed this lawsuit on November 9, 2018. *See* Docket No. 1. Plaintiffs assert three claims. First, both plaintiffs bring a claim pursuant to 42 U.S.C. § 1983 for unlawful detention. Docket No. 30 at 24. Second, William brings a claim pursuant to § 1983 for unreasonable search. *Id.* at 26. Third, David brings a claim pursuant to § 1983 for unlawful arrest. *Id.* at 27.

Defendant filed a motion to dismiss on July 8, 2019. *See* Docket No. 34. The magistrate judge filed his recommendation on November 22, 2019. *See* Docket No. 39. Plaintiffs filed their objections on December 6, 2019. *See* Docket No. 40.

## II. LEGAL STANDARD

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when

neither party objects to those findings"). The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because plaintiffs are proceeding pro se, the Court will construe their objections and pleadings liberally without serving as their advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal

conclusions."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," a plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

### A. Unlawful Detention

Magistrate Judge Hegarty recommends that the Court grant defendant's motion to dismiss plaintiffs' claim for unlawful investigative detention. Docket No. 39 at 10, 12. As to David, Magistrate Judge Hegarty recommends that the claim be dismissed because, based on defendant's prior experience with David, David's holding of a cardboard sign, and David's location on a median, defendant had reasonable suspicion that David was violating the panhandling ordinance. *Id.* at 8-10. As to William, Magistrate Judge Hegarty recommends that the claim be dismissed because, based on the conversation between defendant and plaintiffs about whether William was "[d]oing

the same thing as David," defendant had reasonable suspicion that William was violating the panhandling ordinance. *Id.* at 10-11.

Plaintiffs object to the magistrate judge's recommendations as to both plaintiffs. Docket No. 40 at 1-2. Specifically, plaintiffs object that Magistrate Judge Hegarty's analysis failed to consider whether defendant had any "specific and articulable facts that would begin fairly differentiating between a public road and a private drive." *Id.* at 2. Additionally, they object that the magistrate judge considered a fact which was not alleged in plaintiffs' complaint. *Id.* Specifically that "[d]efendant observed William standing in a median and holding up a cardboard sign for passing motorists." *Id.*

The Court agrees with the recommendation that plaintiffs have failed to state a claim for relief. There are three types of police/citizen encounters: consensual encounters, investigative detentions, and arrests. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). Both plaintiffs and defendant agree that defendant's stop of plaintiffs was an investigative detention. Docket No. 34 at 6, ¶ 18; Docket No. 37 at 3, ¶ 5. To justify defendant's investigative detention of plaintiffs, defendant needed "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Reasonable suspicion requires more than a hunch, *Brown v. Texas*, 443 U.S. 47, 52 n.2 (1979), but is "considerably less than proof by a preponderance of the evidence or that required for probable cause." *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011). Reasonable suspicion must be "based upon the totality of the circumstances," and officers are

permitted to draw on their own experience. See *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206-07 (10th Cir. 2008) (quotations and citations omitted). The officer "must have a particularized and objective basis for suspecting the particular stopped of criminal activity." *Oliver*, 209 F.3d at 1186 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

As to David, the recommendation correctly concludes that defendant had reasonable suspicion to detain David based on the totality of the circumstances. David was holding a sign at a median and, in talking to plaintiffs, defendant realized that he and other Federal Heights police officers had previously encountered David violating Federal Heights' panhandling ordinance. Docket No. 39 at 8-9. It does not matter, for purposes of the reasonable suspicion analysis, that the median at which David was standing turned out to be private. Plaintiffs' complaint states that there were no signs indicating whether the street was private or not. Docket No. 30 at 6, ¶ 5. Based on David's location close to Federal Boulevard, a major public street to which the panhandling ordinance unambiguously applies and where motorists could be able to see his sign, defendant had reasonable suspicion that David was violating the panhandling ordinance.

As to William, his only objection is that the magistrate judge "attempted to inject an unsubstantiated fact into" the analysis. Docket No. 40 at 2, ¶ 3.[2] Specifically,

---

[2] William does not object to the magistrate judge's conclusion that William potentially being located outside of Federal Heights is immaterial to the investigative detention analysis. *See* Docket No. 39 at 11. The Court finds no error with the magistrate judge's conclusion on this issue.

7

William argues that the complaint does not contain the fact that "[d]efendant observed William standing in a median and holding up a cardboard sign for passing motorists." *Id.* It is true that plaintiffs do not allege that defendant saw William holding a cardboard sign. However, this mistake is not material. First, Magistrate Judge Hegarty's analysis does not hinge on that fact. Rather, Magistrate Judge Hegarty reasoned that plaintiffs' statement to defendant that William was "doing the same thing," just not in Federal Heights, demonstrated that William was also panhandling. Docket No. 39 at 10-11. Second, in any event, defendant had reasonable suspicion. As just discussed, William admitted that he was panhandling across the street. Docket No. 30 at 11-12. That is sufficient grounds for defendant to have reasonable suspicion, based on the totality of the circumstances, that William was panhandling in Federal Heights that evening as well.

Plaintiffs do not object to the rest of the recommendation on this claim, and the Court finds no error.

### B. Unlawful Arrest

Magistrate Judge Hegarty recommends that the Court grant defendant's motion to dismiss the unlawful arrest claim. Docket No. 39 at 19. Magistrate Judge Hegarty concluded that, based on David's location on a median next to a major thoroughfare, the language of the ordinance prohibiting solicitation from the occupant of a vehicle traveling on "any" street, and the ordinance's explicit coverage to "any" median, that probable cause existed to arrest David. *Id.* at 17-19. Magistrate Judge Hegarty further reasoned that, even if defendant was mistaken as to the ordinance's application to

David's precise location, "such a mistake would have been reasonable such that it would not defeat qualified immunity." *Id.* at 19.

David's principal objections are with the magistrate judge's interpretation of the panhandling ordinance and how it applies to the probable cause analysis. First, David argues that the magistrate judge is considering David "guilty until proven innocent" because the magistrate judge reasoned that he failed to allege how contributions other than "stereotypical money" would not fall within the ordinance's prohibition. Docket No. 40 at 2. David claims that this consideration essentially boils down to, "because we don't know for sure that David *wasn't* out there soliciting for employment or other contributions, we're allowed to infer until further notice that he *was*." *Id.* Second, David argues that the magistrate judge was ignorant of the title of the ordinance and the definition of "street" in the Federal Heights municipal code. *Id.* at 3-4.

For an officer to have probable cause, she must have knowledge or reasonably trustworthy information that would "lead a prudent person to believe that the arrestee has committed or is committing an offense." *A.M. v. Holmes*, 830 F.3d 1123, 1138 (10th Cir. 2016). However, defendant contends that he is not liable because he is entitled to qualified immunity. Docket No. 34 at 5, ¶ 15.

Qualified immunity provides an officer such as defendant "immunity from suit" under certain circumstances. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). Once a defendant invokes qualified immunity, a plaintiff must demonstrate that the defendant "violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Riggins v. Goodman*, 572 F.3d

9

1101, 1107 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In the probable cause context, an officer will have qualified immunity if there is "arguable" probable cause, such that "a reasonable officer could have believed that probable cause existed to arrest" a plaintiff. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

The Court agrees with the recommendation that David has failed to state a claim for unlawful arrest. First, David misinterprets Magistrate Judge Hegarty's statement that he failed to explain how contributions other than "stereotypical money" fall or do not fall within the ordinance. Docket No. 39 at 18. That statement does not say that the magistrate judge was inferring that David was soliciting other contributions. Rather, the magistrate judge concluded that David failed to address why help other than "stereotypical money" would not fall within the ordinance's prohibition on panhandling. In any event, plaintiffs themselves allege that they were requesting help other than "stereotypical 'money.'" Docket No. 30 at 7, ¶ 6. Moreover, at the time of the arrest, plaintiffs allege that David admitted that he had been in trouble on several occasions, including with defendant, for panhandling in violation of city ordinances. *Id.* at 9-13. The Court agrees that, based on David's comments to defendant, his proximity to Federal Boulevard, and his standing on a median, defendant had probable cause or, at the very least, arguable probable cause to arrest David.

The Court also finds plaintiffs' arguments as to the title of the ordinance unpersuasive. As Magistrate Judge Hegarty concluded, the portion of the ordinance referring to medians "separat[ing] traffic lanes for vehicular travel" could be reasonably read to apply to the type of median on which David was standing. Docket No. 39 at 18.

The Court agrees with the recommendation that, even if this is a mistaken application of the ordinance, such a mistake would not defeat qualified immunity because a reasonable officer could believe that the ordinance applied to where David was standing.

Plaintiffs do not object to the rest of the recommendation's analysis on this claim, and the Court finds no error.

### C. Unreasonable Search

Plaintiffs do not object to the magistrate judges's recommendation as to defendant's search of William. The Court has reviewed the non-objected portions of the recommendation to satisfy itself that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. Based on this review, the Court has concluded that this portion of the recommendation is a correct application of the facts and the law.

## IV. CONCLUSION

It is therefore

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 39] is **ACCEPTED**. It is further

**ORDERED** that Defendant's Motion to Dismiss [Docket No. 34] is **GRANTED**. It is further

**ORDERED** that this case is closed.

DATED April 6, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge